## Case No. 15,473.

### UNITED STATES v. JENKINS et al.

[2 Law Rep. 146.]

Circuit Court, S. D. New York. Aug. 3, 1838.

SHIPPING—NATIONALITY OF VESSEL—WHALING VOYAGES.

1. The ownership of a vessel determines her national character, and this may be proved in the same manner as that of any other chattel.

2. Vessels under a register, and not having a license, may be legally employed on a whaling voyage, and may come into American ports without subjecting themselves to the disadvantages or disabilities of foreign vessels.

The defendants were indicted for an endeavor to make a revolt on board the whaling ship Georgia, of New London, Captain J. P. Hall. She was regularly registered as an American vessel, but not licensed, and was on a fishing voyage in the South Atlantic Ocean, when the offence occurred. Evidence was adduced on the part of the prosecution which proved that the prisoners had refused to obey the captain's orders, and acted in such a way as to clearly come under the legal definition of attempting to make a revolt.

Mr. Nash, for the prisoners, raised two objections: First, that the United States district attorney must prove the American character of the vessel, by the production of the custom-house papers. Secondly, that a registered vessel was not authorised to engage in the fisheries, and therefore the defendants could not be charged with any offence committed on board her.

Dist. Atty. Butler contended that, according to the law of 1835, it was only necessary to show that the vessel was de facto an American vessel, owned by American citizens, claiming to be, and in fact being, an American vessel. And that, although deprived of the privileges of American vessels, according to our revenue laws, she must still be considered an American vessel according to the law of 1835, whether she was de jure or not an American vessel. Secondly, that a register was sufficient for this purpose, and that it was not necessary, by the act of 1792 [1 Stat. 287], to take out a license unless for the purpose of obtaining certain privileges and immunities, but that her not having done so did not render her the less an American vessel, de facto if not de jure.

BETTS, District Judge (charging jury). The defendants have put in only a general plea of not guilty, but they have also a right to avail themselves of anything which goes to show they are not guilty. It is, therefore, not sufficient merely to prove their conduct criminal, in the abstract, but it must be also shown that the act which they have committed is made criminal by law.

The defendants now take the ground, that the duty, an alleged breach of which they are being tried for, was not obligatory on them, and that, therefore, this court has no jurisdiction over them, and cannot take cognizance of their conduct, while they were on board that vessel. If this court were to act solely on its own impression, it could entertain no doubt or hesitation in relation to the question. Because, ever since 1789 and 1793, prosecutions of this sort have been frequently before this court, and it has always exercised jurisdiction over them, and the prisoners, if convicted, have been invariably punished. The court would, therefore, feel itself fully warranted in adhering to that interpretation of the law, which it had heretofore given, if it had not been suspended by an expose of a high character. It appears that, within the last two months, a question has been raised at Rhode Island, whether men on board a whale ship, circumstanced as the one now in question, are amenable to the laws of the United States for certain breaches of discipline. And that court decided that they are not. This court, however, entertains a different opinion; but, in deference to the respected authority which has judged otherwise, we shall not now pass upon the question without further consideration, but put it in a shape in which it can be finally determined. And if it appears that this court has been so long in error, we shall of course alter our view of the law, but, if we consider ourselves right, we shall continue to entertain the same opinion, until it is corrected, not by a coordinate jurisdiction, highly as we respect it, but by that court which can alone overrule us, which is the supreme court of the United States. The court of Rhode Island and this court possess but the same authority, and neither of them have power to lay down rules for the guidance of the other, except as advisory. We, however, look to the court of Rhode Island with great respect, and, if that court had been the first to lay down the rule in relation to this question, we would readily conclude to decide as that court has decided, until the court at Washington determined the matter. But this court has, for nearly forty years, decided differently, and it now becomes a question whether this court have laid down the rule correctly, or that the more recent decision shall be adopted as the right one. The question then arises thus: The law says that if American seamen commit certain acts they are subject to be prosecuted.

and other laws require certain preliminary conditions to be complied with, before vessels can possess certain privileges and advantages. And, if the rule laid down by the court of Rhode Island is correct, it may go no farther than this,—that all vessels sailing with a register, must pay duties on oil and skins. like foreign vessels, and be liable to the inconveniences and disadvantages of foreign vessels, and yet the seamen on board them be subject and amenable to the laws of the United States.

This court will now lay down its view of the law in such a broad and comprehensive way as will suffice to have the question finally determined. I lay it down as a rule of law, that persons are subject to criminal prosecution for offences committed on board American vessels, on the high seas, or in foreign ports, and that the ownership of the vessel determines her national character, within the interpretation of these laws, and that the ownership may be proved in the same manner as that of any other chattel, and that it is not necessary for the public prosecutor to produce any documentary evidence. Such has been the uniform course of decision in this circuit for years past, and the principle seems to be distinctly recognized. [U. S. v. The Pirates] 5 Wheat. [18 U. S.] 199. It is, therefore, sufficient to prove by parol evidence that the vessel was owned by American citizens. Whatever effect the want of a license, and proceeding on a fishing voyage under a register, may have as to the privileges and advantages of the ship under our revenue laws, her being documented with the one or the other improperly, does not denationalize the vessel. She may be subject to duties and disabilities at the custom-house, as if not documented at all, or as if she was a foreign vessel, but no act of congress takes away her intrinsic character of American property. But the court will go farther, and say that vessels, under a register, and not having a license can be legally employed on a whaling voyage, and can come into American ports without subjecting themselves to the disadvantages or disabilities of foreign vessels; and that these vessels which go to the South Atlantic Ocean, ought to be admitted on paying American tonnage duties, and no duties on the oil; and that the statute which requires a license, refers to a different sort of trade.

The jury, bearing in mind these propositions, will now retire to consider the evidence, and determine on the guilt of the defendants. If the jury find them guilty, the court will suspend their sentence until the case is fully argued before the judges.

The jury retired for a few minutes, and brought in a verdict of guilty against all the prisoners

[The case was afterwards heard on motion in arrest of judgment. See Case No. 15.473a.]